**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-11-0001106**
**15-SEP-2014**
**08:36 AM**

NO. CAAP-11-0001106

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

JULIANA ZHANG, Claimant-Appellant, v.
STATE OF HAWAI'I, DEPARTMENT OF LAND AND
NATURAL RESOURCES, Employer-Appellee, Self-Insured

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEAL BOARD
(CIVIL NO. AB-2003-365 (2-94-41072))

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Leonard and Reifurth, JJ.)

Claimant-Appellant Juliana Zhang (**Zhang**) appeals *pro se* from a Labor and Industrial Relations Appeals Board (**LIRAB**) December 6, 2011 Decision and Order that affirmed in part, reversed in part, and modified in part several decisions by the Director of Labor and Industrial Relations (**the Director**) regarding Zhang's claim for workers' compensation benefits from Employer-Appellee State of Hawai'i, Department of Land and Natural Resources (**DLNR**).

It appears that Zhang raises the following points of error on appeal:[1]

---

[1]     Zhang's Opening Brief fails to comply with the requirements of Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(3), in that she does not provide "[a] concise statement of the case," nor does she "append[] to the brief a copy of the judgment, decree, findings of fact and conclusions of law, order, opinion or decision relevant" to her points on appeal. In addition, Zhang's Opening Brief fails to comply with the requirements set forth in HRAP Rule 28(b)(7), which states that the appellant's opening brief should include
(continued...)

(1) the LIRAB erred by failing to find that DLNR committed fraud against Zhang;

(2) the LIRAB erred by denying Zhang temporary total disability (**TTD**) payments, medical benefits, and "other benefits" after May 5, 2004;

(3) the LIRAB erred by crediting the opinion of Dr. Streltzer and by determining that DLNR presented substantial evidence to overcome the HRS § 386-85 (1993)[2] presumption regarding Zhang's medical condition/diagnosis of dysthymia;

(4) the LIRAB erred regarding its permanent partial disability (**PPD**) benefits decision;

(5) the LIRAB erred by denying Zhang's request for a change in her workers' compensation "average weekly wage" (**AWW**);

(6) the LIRAB erred by determining that DLNR did not violate HRS § 386-142;

(7) the LIRAB erred by denying Zhang (in its September 29, 2009 Order Granting Motion to Compel, in Part) "full discovery" regarding her termination;

---

[1](...continued)
an argument section "containing the contentions of the appellant on the points presented and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on," and contains lengthy "Issues presented for Review," rather than a concise statement of points of error meeting the requirements stated in HRAP Rule 28(b)(4). We nevertheless have attempted to review this case on the merits. See O'Connor v. Diocese of Honolulu, 77 Hawai'i 383, 386, 885 P.2d 361, 364 (1994) (stating that "the policies of this court are to permit litigants to appeal and to have their cases heard on the merits, where possible" (citations omitted)).

[2]      HRS § 386-85 states the following:

§ 386-85 **Presumptions.** In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary:

(1)   That the claim is for a covered work injury;

(2)   That sufficient notice of such injury has been given;

(3)   That the injury was not caused by the intoxication of the injured employee; and

(4)   That the injury was not caused by the wilful intention of the injured employee to injure oneself or another.

2

(8) the LIRAB erred by failing to recognize her entitlement to vacation and sick leave credits, as well as her rights and benefits as a member of the Hawaiʻi Government Employees Association (**HGEA**); and

(9) the award of attorney's fees to Zhang's attorney, Wayne Mukaida (**Mukaida**), should not be included in the present appeal.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Zhang's points of error as follows:

(1) On August 24, 2010, Zhang filed a "fraud complaint" against the DLNR with the Disability Compensation Division (**DCD**) pursuant to HRS § 386-89(b) (1993), which states that "[t]he director may at any time, either of the director's own motion or upon the application of any party, reopen any case on the ground that fraud has been practiced on the director or on any party and render such decision as is proper under the circumstances."

HRS § 386-87(c) (1993) provides:

> The [LIRAB] shall have power to review the findings of fact, conclusions of law and exercise of discretion by the director in hearing, determining or otherwise handling of any compensation case and may affirm, reverse or modify any compensation case upon review, or remand the case to the director for further proceedings and action.

In this case, however, it does not appear that the Director made any ruling on the issue of Zhang's fraud complaint. Thus the LIRAB had no decision to review. Further, it does not appear that LIRAB was asked to remand the matter to the Director or otherwise take any action on Zhang's fraud complaint. Therefore, the issue of Zhang's August 24, 2010 fraud complaint is not properly before us, and the LIRAB did not err by failing to find that the DLNR committed fraud against Zhang. See Kalapodes v. E.E. Black, Ltd., 66 Haw. 561, 565, 669 P.2d 635, 637 (1983) ("[t]his court will not consider issues for the first time which were not presented to the [LIRAB]" (citation

omitted)); see also HRS § 386-87(c) (explaining the LIRAB's powers of review).

(2) Zhang contends that she "had rights to VR [Vocational Rehabilitation] and TTD, the entire period [of] May 2004 to present" and that this entitled her to receive "2/3 wages [in] TTD payments" during that period. Zhang also argues that the LIRAB was incorrect in finding that there were "no medical treatment plans after May 5, 2004," which seems to be a reference to the LIRAB's Finding of Fact (**FOF**) 47[3] and FOF 48[4] in its Decision and Order, though she fails to identify as erroneous any of the LIRAB's FOFs in this section.

Zhang points to only one instance in the record where there was allegedly a valid disability certification after May 5, 2004 — an August 9, 2005 Workers' Compensation Treatment Plan written by Dr. Adam-Terem. This document, though, did not comport with the HRS § 386-96(a)(2) requirement that it include the "dates of disability" because it simply constituted a plan for future treatment and did not specify any range of time the document was supposed to cover. Similarly, although there were other medical reports dated after May 5, 2004 (*i.e.*, the reports by Dr. Reed and Dr. Smolenski), these also were insufficient under HRS § 386-96 because the reports were based on a review of previous records and did not involve "giv[ing] any treatment or render[ing] any service" to Zhang. See HRS § 386-96. Therefore, upon review of the entire record, given the lack of adequate disability certification evidence after May 5, 2004, and the deference afforded to the LIRAB "[w]hen mixed questions of law and fact are presented," we conclude that the LIRAB's FOFs 47 and 48 were supported by "substantial evidence" (and hence not clearly erroneous) and that the LIRAB did not clearly err

---

[3]     FOF 47 states that "[t]here are no medical certifications that [Zhang] was temporarily and totally disabled as a result of the June 20, 1994 work injury for the period after May 5, 2004."

[4]     FOF 48 states that "[t]he [LIRAB] finds, therefore, no evidence that [Zhang] was temporarily and totally disabled after May 5, 2004."

regarding its TTD decision in Conclusion of Law (**COL**) 4.[5] See Igawa v. Koa House Rest., 97 Hawai'i 402, 406, 38 P.3d 570, 574 (2001).

Zhang also claims that she should be awarded TTD based on her entitlement to VR[6] and that the LIRAB erroneously denied her "medical and other benefits." These arguments are without merit. First, Zhang provides no evidence or authority, legal or otherwise, as to how the LIRAB erroneously denied her "medical and other benefits." Therefore, these arguments are deemed waived. See HRAP Rule 28(b)(7). Zhang's argument that she was entitled to TTD benefits because she was entitled to be enrolled in VR services fails, *inter alia*, because she neglects to provide any evidence that she was enrolled in VR after May 5, 2004, and we find none.

(3) Zhang argues that the LIRAB clearly erred by crediting the opinion of Dr. Jon Streltzer (**Streltzer**) and by determining that DLNR presented substantial evidence to overcome the statutory presumption regarding Zhang's medical condition/diagnosis of dysthymia.[7] As the LIRAB recognized and applied in this case, and as stated in HRS § 386-85 (1993), Hawai'i workers' compensation law contains a strong presumption in favor of employee claims. HRS § 386-85 provides that for all workers' compensation claims "it shall be presumed, in the absence of substantial evidence to the contrary . . . [t]hat the claim is for a covered work injury." This places a "heavy burden" on the employer, imposing "the burden of going forward with the evidence and the burden of persuasion." Van Ness v.

---

[5] The LIRAB's COL 4 states the following: The [LIRAB] concludes that [Zhang] was not entitled to [TTD] benefits after May 5, 2004 for lack of disability certification. The [LIRAB] makes no determination of [Zhang's] entitlement to TTD benefits after September 18, 2009, as TTD may be related to re-enrollment in VR."

[6] The LIRAB's FOF 46 in its December 6, 2011 Decision and Order stated the following: "The [LIRAB] finds, therefore, that [Zhang] is entitled to further VR services."

[7] Dr. Jon Streltzer, a psychiatrist, defines dysthymia as a "chronic enduring mild depression." Similarly, Dr. Rosemary Adam-Terem (**Dr. Adam-Terem**), a Hawai'i-licensed clinical psychologist, describes dysthymia as "a pervasive, low-grade depression."

State of Haw., Dep't of Educ., 131 Hawai'i 545, 558, 319 P.3d 464, 477 (2014) (citing Lawhead v. United Air Lines, 59 Haw. 551, 559, 584 P.2d 119, 124 (1978) and Akamine v. Hawaiian Packing & Crating Co., 53 Haw. 406, 408, 495 P.2d 1164, 1166 (1972)).

"In order to overcome the HRS § 386-85(1) presumption of work-relatedness, the employer must introduce substantial evidence to the contrary." Igawa, 97 Hawai'i at 407, 38 P.3d at 575. "The term substantial evidence signifies a high quantum of evidence which, at the minimum, must be relevant and credible evidence of a quality and quantity sufficient to justify a conclusion by a reasonable [person] that an injury or death is not work connected." Id. (citations and internal quotation marks omitted).

Zhang does not challenge the LIRAB's findings concerning her medical diagnoses; instead she challenges the weight given to Dr. Streltzer's opinion and, ultimately, the sufficiency of the evidence in favor of the employer. As stated by the LIRAB, Zhang first sought treatment from Dr. Mirikitani, who diagnosed her as suffering major depression with agitation, insomnia, and fatigue. Dr. Adam-Terem, Zhang's treating psychologist, initially provided an Axis 1 diagnosis in 1994 of major depression and a generalized anxiety disorder. Dr. Adam-Terem, who continued to treat Zhang, later provided a diagnosis of dysthymia.

At employer's request, Dr. Streltzer examined Zhang in August 2002 and provided a detailed report regarding that examination (and his review of Zhang's treatment records) in which he opined, *inter alia*, that Zhang had no Axis 1 disorder, but met the criteria for a "Paranoid Personality Disorder with Narcissistic Traits." Although noting that dysthymia was a possibility, Dr. Streltzer opined Zhang did not present with continuous depressive symptoms and that Dr. Adam-Terem's notes were consistent with his diagnosis because they focused on personality disorder issues including paranoia and entitlement issues. Dr. Streltzer also opined that, in 1994, Zhang may have

suffered from a depressive disorder or an adjustment reaction to the loss of her job.

In 2005, Dr. Adam-Terem changed Zhang's diagnosis to major depression in partial remission. Although Dr. Adam-Terem expressed some agreement with Dr. Streltzer, she disagreed regarding the dysthymia diagnosis because Zhang's personality factors were not problematic until the work-stress situation, but also noted that Zhang had "improved greatly."

Also in 2005, Dr. Daniel Reed (**Dr. Reed**) conducted a review at Zhang's request. Dr. Reed opined that the documentation suggested a major depressive episode that likely resolved to dysthymia "currently" and that it was unlikely that work stress alone accounted for Zhang's residual problems. Rather, it was likely Zhang suffered a mood disorder concurrent with her personality traits.

Based on all of the evidence before it, the LIRAB credited the opinion of Dr. Streltzer over the opinions of Dr. Adam-Terem and Dr. Reed with regard to the diagnosis of dysthymia. Accordingly, the LIRAB found that the employer had presented substantial evidence to overcome the presumption with regard to a diagnosis of dysthymia, although finding that the employer had not presented the substantial evidence necessary to overcome the presumption regarding Zhang's earlier diagnosis of major depression and adjustment disorder, both in remission.

Upon careful review, we conclude that the LIRAB's findings are supported by substantial evidence sufficient to overcome the strong presumption in favor of Zhang related to Zhang's medical condition/diagnosis of dysthymis. The LIRAB did not clearly err in crediting the opinion of Dr. Strelter over the opinion of Dr. Adam-Terem and somewhat equivocal opinion of Dr. Reed. It is well established that, in workers' compensation cases, "the credibility of witnesses and the weight to be given their testimony are within the province of the trier of fact and, generally, will not be disturbed on appeal." Tamashiro v. Control Specialist, Inc., 97 Hawai'i 86, 92, 34 P.3d 16, 22

(2001). The LIRAB's assessment of the weight of evidence in this case is not clearly erroneous.

(4) Zhang also raises the issue of PPD benefits; however, it is unclear whether she is alleging error by the LIRAB in this regard and, if so, what that error entails. In addition to attacking DLNR for not settling the case, Zhang simply states that "[t]he [LIRAB] does not decide PPD in the December 6, 2011 Decision" and that it is up to the Intermediate Court of Appeals (**ICA**) to decide "whether this case be remanded for the [Director] to determine [PPD] at a later date." Because Zhang does not cite evidence or explain how the LIRAB erred regarding PPD, or even whether she is challenging their decision, this matter is waived. See HRAP Rule 28(b)(7) ("Points not argued may be deemed waived.")

(5) The issue of AWW is governed by HRS § 386-51 (Supp. 2013), which states in relevant part that: "Average weekly wages shall be computed in such a manner that the resulting amount represents most fairly, in the light of the employee's employment pattern and the duration of the employee's disability, the injured employee's average weekly wages from all covered employment at the time of the personal injury." The LIRAB addressed the issue of AWW in its FOFs 51-55 and its COL 6, where the LIRAB concluded that "that the Director did not err in denying [Zhang's] request for a change in her [AWW]" and that the AWW "was correctly computed at $651.00." Zhang does not explain how exactly she arrived at the figure of $738.50 or why the LIRAB's determination of AWW was clearly erroneous.

FOF 52 in the LIRAB's Decision and Order states that a "Notification of Personnel Action dated September 24, 1993 noted a monthly salary rate of $2,608.00, a shortage differential of $207.00 and a salary adjustment 'diff' of $6.00." FOF 54 states that although a new monthly salary of $2,712.00 was set to begin on July 1, 1994, the salary as of June 30, 1994 was $2,608.00. In FOF 55, the LIRAB correctly calculated AWW based on the numbers from the September 24, 1993 Notification of Personnel Action, which the LIRAB found "to be the best evidence of

8

[Zhang's AWW] at the time of her June 20, 1994 work injury. Zhang does not substantively challenge any of these FOFs on appeal, and they are thus considered binding. See Bhakta v. Cnty. of Maui, 109 Hawai'i 198, 202 n.2, 124 P.3d 943, 947 n.2 (2005). Accordingly, we conclude that the foregoing FOFs provide substantial evidence to support the LIRAB's COL 6 and that the LIRAB did not clearly err regarding its AWW decision. See Igawa, 97 Hawai'i at 406, 38 P.3d at 574.

(6) Zhang asserts that the LIRAB erred by determining that DLNR did not violate HRS § 386-142, noting only that she was terminated after she filed her workers' compensation claim and after the date of her injury. In making this assertion, Zhang appears to challenge FOF 58[8] and COL 7.[9] Zhang provides no further argument, facts, or authority supporting her assertion that the LIRAB erred, instead asking this "Court to spell out ANY evidence of any action to terminate Zhang or to question her work authorization initiated PRIOR to June 20, 1994." We conclude that this argument is without merit.

(7) Zhang asserts that the LIRAB erred by denying Zhang (in its September 29, 2009 Order Granting Motion to Compel, In Part) "full discovery" regarding her termination. Zhang fails to identify how the LIRAB erred and under what legal authority she was entitled to "full discovery."[10] Rather, Zhang limits her argument to unsupported allegations of fraud, the possibility of "black" files, and to general complaints about the deficiencies of the INS "warning notice." She makes statements such as the

---

[8]    The LIRAB's FOF 58 states the following: "The [LIRAB] finds that [Zhang's] termination from employment was not solely the result of her industrial injury of June 20, 1994."

[9]    The LIRAB's COL 7 states the following: "The [LIRAB] concludes, considering Section 386-142, [HRS], that [Zhang's] termination from employment was not solely the result of her industrial injury of June 20, 1994. There is no evidence to support this contention."

[10]    Although Zhang claims that she was denied "full discovery" and that "the [LIRAB's] Order essentially limited [her] discovery to 'personnel records[,]'" the LIRAB's September 29, 2009 Order actually extended beyond that, stating that discovery was to include "all documents, including personnel records relevant to the issues on appeal, or which may be reasonably calculated to lead to the discovery of admissible evidence."

warning notice was "a concocted document" and that it "stinks[] and was cooked up between DLNR and INS to cover the State of Hawaii 'employer' ass, probably at DLNR's behest, to help defeat Zhang's claims against DLNR." She also neglects to include any citations to legal authority supporting her entitlement to further discovery in this matter, and her few record citations are to the LIRAB's September 29, 2009 Order itself and to her initial discovery request letter. We conclude that this argument is without merit.

(8) It does not appear that any issues related to Zhang's vacation, sick leave, and/or other benefits were presented to the LIRAB or even within its jurisdiction in this matter. Zhang is not entitled to any appellate relief related to these benefits.

(9) Zhang contends that it was error to include the award of Mukaida's attorney's fees in the present appeal, arguing that "[t]he correct appeal of the Director decision on the DCD approved fees lies with the LIRAB, not with the [ICA]."[11] However, it is undisputed that "the attorney's fee order by the DCD on January 18, 2012 [] was not appealed to the LIRAB" and is not now before the ICA. See Kalapodes, 66 Haw. at 565, 669 P.2d at 637 ("[t]his court will not consider issues for the first time which were not presented to the [LIRAB]" (citation omitted)). Therefore, this argument is without merit.

---

[11] The Director issued its Approval of Attorney's Fees on January 18, 2012.

For these reasons, the LIRAB's December 6, 2011 Decision and Order is affirmed.

DATED: Honolulu, Hawai'i, September 15, 2014.

On the briefs:

Juliana Zhang
Claimant-Appellant Pro Se

James E. Halvorson
Steve E. Miyasaka
Deputy Attorneys General
State of Hawai'i
for Employer-Appellee,
 Self-Insured

Presiding Judge

Associate Judge

Associate Judge

11